UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


FREDDIE LAWRENCE,

                Petitioner,

v.                                Case No. 3:15-cv-1131-J-34PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                Respondents.

_____

## ORDER

### I. Status

Petitioner Freddie Lawrence, an inmate of the Florida penal system, initiated this action on September 21, 2015, by filing a pro se Petition for Writ of Habeas Corpus (Petition; Doc. 1) under 28 U.S.C. § 2254. In the Petition, Lawrence challenges a 2008 state court (Duval County, Florida) judgment of conviction for second degree murder. Respondents have submitted a memorandum in opposition to the Petition. See Respondents' Answer in Response to Order to Show Cause and Petition for Writ of Habeas Corpus (Response; Doc. 15) with exhibits (Resp. Ex.). On November 3, 2015, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. 4), admonishing Lawrence regarding his obligations and giving Lawrence a time frame in which to submit a reply. Lawrence submitted a brief in reply. See Petitioner's Reply to the State's Response (Reply; Doc. 18). This case is ripe for review.

## II. Procedural History

On June 5, 2007, the State of Florida charged Lawrence with second degree murder. Resp. Ex. A at 8, Information. Lawrence proceeded to a jury trial in April 2008, at the conclusion of which, on April 18, 2008, the jury found him guilty, as charged. See id. at 76-77, Verdict; 932-33, Transcript of the Jury Trial (Tr.). On May 20, 2008, the court sentenced Lawrence to a term of imprisonment of thirty-five years. Id. at 103-08, Judgment.

On direct appeal, Lawrence, with the benefit of counsel, filed an amended initial brief, raising the following issues: whether Lawrence's theory of self-defense, coupled with testimony by independent witnesses of the decedent possessing and pointing a gun, was overcome and sufficiently rebutted by the State's pyramiding of circumstantial evidence (ground one); whether Lawrence unequivocally invoked his right to remain silent and have an attorney present during questioning (ground two); whether the prosecutor's characterization of the sequences concerning Lawrence's arrest implying flight and thus evidence of guilt created an improper inference of guilt (ground three); whether a trial judge may comment on the trial's progress in front of the jury (ground four); and whether the prosecutor's numerous misstatements of law and fact, comments on Lawrence's right to remain silent, improper shifting of the burden of proof, bolstering of the State's witnesses, denigrating Lawrence, and inflammatory

argument constituted prosecutorial misconduct and violated Lawrence's right to a fair trial and due process of law (ground five). Resp. Ex. C. The State filed an answer brief, <u>see</u> Resp. Ex. D, and Lawrence filed a reply brief, <u>see</u> Resp. Ex. E. On September 29, 2009, the appellate court affirmed Lawrence's conviction and sentence without issuing a written opinion, <u>see</u> Resp. Ex. G, and the mandate issued on October 15, 2009, <u>see</u> Resp. Ex. H.

On January 5, 2010, Lawrence filed a pro se motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 motion). <u>See</u> Resp. Ex. I at 1-41. He amended the Rule 3.850 motion on December 10, 2010, August 22, 2011, and March 26, 2012. <u>See</u> <u>id.</u> at 53-67, 152-54, 170-83. In his request for post-conviction relief, he asserted that counsel (Debra Billard) was ineffective because she failed to: object to the legally insufficient Information that charged Lawrence with second degree murder (ground one); discover the State's failure to properly disclose its agreements with witnesses in exchange for their testimony at trial (ground three); convey the State's plea offer for the lesser-included offense of manslaughter (ground four); conduct an adequate pretrial investigation (ground five); properly investigate and call Janett Richard, Denard Jones, and Victoria Reed as defense witnesses at trial (ground six); properly argue and file a motion for new trial (ground seven); and request an evidentiary hearing to determine if he was immune from prosecution

under stand-your-ground law (ground ten). He also stated that the trial court erred when it failed to reduce the second degree murder charge to justifiable homicide (ground eight), and when it adjudicated him guilty of second degree murder because the verdict was contrary to the law and the weight of the evidence (ground nine). Additionally, he asserted that the trial court lacked subject matter jurisdiction because the Information was legally insufficient (ground two), and committed fundamental error when it improperly instructed the jury that the crime of manslaughter required that he intentionally caused the victim's death (ground eleven). The circuit court held an evidentiary hearing on grounds six and ten on January 3, 2013. See id. at 481-545. On September 26, 2013, the circuit court denied his Rule 3.850 motion. See id. at 345-57. Lawrence appealed the circuit court's denial as to grounds four and eleven. On October 23, 2014, the appellate court partially affirmed the circuit court's denial of post-conviction relief, reversed the court's denial of relief as to ground four, and remanded with instructions that the circuit court hold an evidentiary hearing on the claim or attach portions of the record conclusively refuting the claim. See Lawrence v. State, 149 So.3d 1162 (Fla. 1st DCA 2014) (per curiam); Resp. Ex. J. As to ground eleven, the appellate court stated:

> As for Ground 11, in which Appellant claimed that, pursuant to Montgomery v. State, 70 So.3d 603 (Fla. 1st DCA 2009), the trial court committed fundamental error during his

4

trial by giving an erroneous manslaughter by
act jury instruction, we agree with the
State's contention that the claim was untimely
and that none of the exceptions to the
two-year time limitation in rule 3.850 are
applicable to this claim.[1] See Fla. R. Crim.
P. 3.850(b) (providing for a two-year time
limitation in which to file a postconviction
claim); see also Surinach v. State, 110 So.3d
95, 95 (Fla. 2d DCA 2013) ("Amended motions
for postconviction relief are subject to the
two-year time limit for filing rule 3.850
motions unless they merely enlarge an issue or
issues raised in the original motion."). To
the extent that Appellant argues in this
proceeding that his appellate counsel was
ineffective in failing to raise the erroneous
jury instruction issue in his direct appeal,
we dismissed Appellant's habeas corpus
petition raising that argument because it too
was untimely. See Lawrence v. State, 92 So.3d
855 (Fla. 1st DCA 2012).

Lawrence, 149 So.3d at 1163 (footnote omitted). Additionally, the

appellate court noted:

[Lawrence]'s direct appeal was pending when we
issued our decision in Montgomery,[2] holding
that intent to kill is not an element of
manslaughter by act and that it was
fundamental error to give an instruction
suggesting that the State was required to
prove intent to kill to prove the crime of
manslaughter. See 70 So.3d at 604-07.

Id. at n.1. On remand, the circuit court held an evidentiary

hearing as to ground four. See Resp. Ex. K at 283-375. On May 15,

---

[1] See Resp. Ex. I at 184-93, State's Response to Defendant's
Supplemental Amendment to Fla. R. Crim. P. Rule 3.850, filed April
23, 2012.

[2] The First District Court of Appeal issued its decision in
Montgomery on February 12, 2009.

2015, the court denied Lawrence's Rule 3.850 motion as to ground four. See id. at 276-78. Lawrence later filed a motion for voluntary dismissal of his appeal, see http://jweb.flcourts.org, Case No. 1D15-2573, and the appellate court dismissed his appeal under Florida Rule of Appellate Procedure 9.350(b) on September 22, 2015, see Resp. Ex. L.

While his Rule 3.850 proceeding was pending, Lawrence filed a pro se petition for writ of habeas corpus on April 29, 2012. See Resp. Ex. M. In the petition, he asserted that the trial court committed fundamental error when it gave the standard jury instruction for the lesser-included offense of manslaughter by act (ground one), and appellate counsel was ineffective because he failed to raise the issue of the trial court's fundamental error (ground two) on direct appeal. On May 22, 2012, the appellate court dismissed the petition as untimely,[3] see Lawrence v. State, 92 So.3d 855 (Fla. 1st DCA 2012); Resp. Ex. N, and later denied his motion for rehearing on August 1, 2012, see Resp. Ex. O.

---

[3] The appellate court cited Florida Rule of Appellate Procedure 9.141(d)(5), which provides in pertinent part:

> A petition alleging ineffective assistance of appellate counsel on direct review shall not be filed more than 2 years after the judgment and sentence become final on direct review unless it alleges under oath with a specific factual basis that the petitioner was affirmatively misled about the results of the appeal by counsel. . . .

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S.Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Lawrence's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

# V. Governing Legal Principles

## A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S.Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated:

> [T]he federal court should "look through" the
> unexplained decision to the last related

> state-court decision that does provide a
> relevant rationale. It should then presume
> that the unexplained decision adopted the same
> reasoning.

Wilson v. Sellers, 138 S.Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. As the Eleventh Circuit has explained:

> First, § 2254(d)(1) provides for federal
> review for claims of state courts' erroneous
> legal conclusions. As explained by the Supreme
> Court in Williams v. Taylor, 529 U.S. 362, 120
> S. Ct. 1495, 146 L.Ed.2d 389 (2000), §
> 2254(d)(1) consists of two distinct clauses: a
> "contrary to" clause and an "unreasonable
> application" clause. The "contrary to" clause
> allows for relief only "if the state court
> arrives at a conclusion opposite to that
> reached by [the Supreme] Court on a question
> of law or if the state court decides a case
> differently than [the Supreme] Court has on a
> set of materially indistinguishable facts."
> Id. at 413, 120 S. Ct. at 1523 (plurality

opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[4] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert.

denied, 137 S.Ct. 2298 (2017). Also, deferential review under §

2254(d) generally is limited to the record that was before the

state court that adjudicated the claim on the merits. See Cullen v.

---

[4] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S.Ct. 1103 (2017).

<u>Pinholster</u>, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>, 134 S.Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. <u>Richter</u>, 562 U.S. at 102. Thus, to the extent that Lawrence's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S.Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism.

> These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[5] <u>supra</u>, at 747–748, 111 S.Ct. 2546; <u>Sykes</u>,[6] <u>supra</u>, at 84–85, 97 S.Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S.Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S.Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S.Ct. 2546.

<u>Martinez v. Ryan</u>, 132 S.Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

---

[5] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[6] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

the procedural default "must result from some
objective factor external to the defense that
prevented [him] from raising the claim and
which cannot be fairly attributable to his own
conduct." McCoy v. Newsome, 953 F.2d 1252,
1258 (11th Cir. 1992) (quoting Carrier, 477
U.S. at 488, 106 S.Ct. 2639).[7] Under the
prejudice prong, [a petitioner] must show that
"the errors at trial actually and
substantially disadvantaged his defense so
that he was denied fundamental fairness." Id.
at 1261 (quoting Carrier, 477 U.S. at 494, 106
S.Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In Martinez, the Supreme Court modified the general rule in

Coleman[8] to expand the "cause" that may excuse a procedural

default. 132 S.Ct. at 1315.

Allowing a federal habeas court to hear a
claim of ineffective assistance of trial
counsel when an attorney's errors (or the
absence of an attorney) caused a procedural
default in an initial-review collateral
proceeding acknowledges, as an equitable
matter, that the initial-review collateral
proceeding, if undertaken without counsel or
with ineffective counsel, may not have been
sufficient to ensure that proper consideration

---

[7]      Murray v. Carrier, 477 U.S. 478 (1986).

[8]      "Negligence on the part of a prisoner's postconviction
attorney does not qualify as 'cause.'" Maples v. Thomas, 565 U.S.
266, 280 (2012) (citing Coleman, 501 U.S. at 753). The Court
reasoned that, under principles of agency law, the attorney is the
prisoner's agent, and therefore, the principal bears the risk of
negligent conduct on the part of his agent. Coleman, 501 U.S. at
753-54. In Coleman, the alleged ineffectiveness of counsel was on
appeal from an initial-review collateral proceeding, and in that
proceeding the prisoner's claims had been addressed by the state
habeas trial court. Id. at 755. However, the Martinez Court
addressed inadequate assistance of counsel at an initial-review
collateral proceeding.

was given to a substantial claim. From this it
follows that, when a State requires a prisoner
to raise an ineffective-assistance-of-trial-
counsel claim in a collateral proceeding, a
prisoner may establish cause for a default of
an ineffective-assistance claim in two
circumstances. The first is where the state
courts did not appoint counsel in the initial-
review collateral proceeding for a claim of
ineffective assistance at trial. The second is
where appointed counsel in the initial-review
collateral proceeding, where the claim should
have been raised, was ineffective under the
standards of <u>Strickland v. Washington</u>, 466
U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984). To overcome the default, a prisoner
must also demonstrate that the underlying
ineffective-assistance-of-trial-counsel claim
is a substantial one, which is to say that the
prisoner must demonstrate that the claim has
some merit. <u>Cf</u>. <u>Miller-El v. Cockrell</u>, 537
U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931
(2003) (describing standards for certificates
of appealability to issue).

<u>Id</u>. at 1318-19.

In the absence of a showing of cause and prejudice, a
petitioner may receive consideration on the merits of a
procedurally defaulted claim if the petitioner can establish that
a fundamental miscarriage of justice, the continued incarceration
of one who is actually innocent, otherwise would result. The
Eleventh Circuit has explained:

[I]f a petitioner cannot show cause and
prejudice, there remains yet another avenue
for him to receive consideration on the merits
of his procedurally defaulted claim. "[I]n an
extraordinary case, where a constitutional
violation has probably resulted in the
conviction of one who is actually innocent, a
federal habeas court may grant the writ even
in the absence of a showing of cause for the

> procedural default." <u>Carrier</u>, 477 U.S. at 496,
> 106 S.Ct. at 2649. "This exception is
> exceedingly narrow in scope," however, and
> requires proof of actual innocence, not just
> legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d
> 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a
> person challenging a conviction must show that
> "counsel's representation fell below an
> objective standard of reasonableness."
> [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052.

16

> A court considering a claim of ineffective
> assistance must apply a "strong presumption"
> that counsel's representation was within the
> "wide range" of reasonable professional
> assistance. Id., at 689, 104 S.Ct. 2052. The
> challenger's burden is to show "that counsel
> made errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the
> defendant by the Sixth Amendment." Id., at
> 687, 104 S.Ct. 2052.
>
> With respect to prejudice, a challenger
> must demonstrate "a reasonable probability
> that, but for counsel's unprofessional errors,
> the result of the proceeding would have been
> different. A reasonable probability is a
> probability sufficient to undermine confidence
> in the outcome." Id., at 694, 104 S.Ct. 2052.
> It is not enough "to show that the errors had
> some conceivable effect on the outcome of the
> proceeding." Id., at 693, 104 S.Ct. 2052.
> Counsel's errors must be "so serious as to
> deprive the defendant of a fair trial, a trial
> whose result is reliable." Id., at 687, 104
> S.Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the
absence of any iron-clad rule requiring a court to tackle one prong
of the Strickland test before the other." Ward, 592 F.3d at 1163.
Since both prongs of the two-part Strickland test must be satisfied
to show a Sixth Amendment violation, "a court need not address the
performance prong if the petitioner cannot meet the prejudice
prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d
1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is
easier to dispose of an ineffectiveness claim on the ground of lack
of sufficient prejudice, which we expect will often be so, that
course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, - U.S. at -, 131 S.Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, - U.S. at -, 131 S.Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). "In addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## D. Ineffective Assistance of Appellate Counsel

The two-part <u>Strickland</u> standard also governs a claim of ineffective assistance of appellate counsel. <u>Overstreet v. Warden</u>, 811 F.3d 1283, 1287 (11th Cir. 2016). The Eleventh Circuit has stated:

> To prevail on a claim of ineffective assistance of appellate counsel, a habeas petitioner must establish that his counsel's performance was deficient and that the deficient performance prejudiced his defense. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); <u>Brooks v. Comm'r, Ala. Dep't of Corr.</u>, 719 F.3d 1292, 1300 (11th Cir. 2013) ("Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under <u>Strickland</u>.") (quotation marks omitted). Under the deficient performance prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688, 104 S.Ct. at 2064.

<u>Rambaran v. Sec'y, Dep't of Corr.</u>, 821 F.3d 1325, 1331 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S.Ct. 505 (2016).

As with a claim of ineffective assistance of trial counsel, the combination of <u>Strickland</u> and § 2254(d) requires a doubly deferential review of a state court decision. <u>See</u> <u>Richter</u>, 562 U.S. at 105; <u>see</u> <u>also</u> <u>Gissendaner</u>, 735 F.3d at 1323 ("This double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.") (quotation marks and

alteration omitted). Indeed, the Supreme Court has opined that "[i]f this standard is difficult to meet, that is because it was meant to be." Richter, 562 U.S. at 102.

When considering deficient performance by appellate counsel,

> a court must presume counsel's performance was "within the wide range of reasonable professional assistance." Id.[9] at 689, 104 S. Ct. 2052. Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments. See Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Smith v. Robbins, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)); see also Burger v. Kemp, 483 U.S. 776, 784, 107 S. Ct. 3114, 97 L.Ed.2d 638 (1987) (finding no ineffective assistance of counsel when the failure to raise a particular issue had "a sound strategic basis").

Overstreet, 811 F.3d at 1287; see also Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 915 (11th Cir. 2009) (stating "any deficiencies of counsel in failing to raise or adequately pursue [meritless issues on appeal] cannot constitute ineffective assistance of counsel").

To satisfy the prejudice prong, a petitioner must show a reasonable probability that "but for the deficient performance, the outcome of the appeal would have been different." Black v. United

---

[9] Strickland, 466 U.S. at 689.

States, 373 F.3d 1140, 1142 (11th Cir. 2004) (citations omitted); see Philmore v. McNeil, 575 F.3d 1251, 1264-65 (11th Cir. 2009) ("In order to establish prejudice, we must first review the merits of the omitted claim. Counsel's performance will be deemed prejudicial if we find that 'the neglected claim would have a reasonable probability of success on appeal.'") (citations omitted).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Lawrence asserts that the trial court erred when it denied his motion to suppress his pretrial statements to law enforcement. See Petition at 3. Lawrence argued this issue on direct appeal, see Resp. Exs. C; E; the State filed an answer brief, see Resp. Ex. D; and the appellate court affirmed Lawrence's conviction and sentence without issuing a written opinion, see Resp. Ex. G.

In its appellate brief, the State addressed the claim on the merits, see Resp. Ex. D at 12-17, and therefore, the appellate court may have affirmed Lawrence's conviction based on the State's argument. If the appellate court addressed the merits, the state court's adjudication of this claim is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not

involve an unreasonable application of clearly established federal law.[10] Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Lawrence is not entitled to relief on the basis of this claim.

Moreover, even assuming the state appellate court's adjudication of the claim is not entitled to deference, Lawrence's claim, nevertheless, is without merit. Lawrence, with the benefit of counsel, filed a motion to suppress his statements to law enforcement. See Resp. Ex. A at 22-23. After a suppression hearing, see id. at 186-257, the trial court denied Lawrence's motion to suppress, see id. at 41-42. The trial court's conclusion is fully supported by the record.

Undoubtedly, in denying Lawrence's motion to suppress, the trial judge, who observed the witnesses as they testified,[11] resolved the credibility issue in favor of believing Sergeant Dingee's testimony. Additionally, the trial judge viewed the DVD

---

[10] See Davis v. United States, 512 U.S. 452 (1994) (stating that if a suspect makes an ambiguous or equivocal reference to an attorney, cessation of questioning is not required but, rather, a suspect must unambiguously request counsel, and an accused's remark, "Maybe I should talk to a lawyer," was not a request for counsel, and therefore, Naval Investigative Service agents were not required to stop questioning him); see also Miranda v. Arizona, 384 U.S. 436 (1966).

[11] Sergeant Scott Dingee (detective and interviewer) and Otto Rafuse (a lawyer retained to represent Lawrence) testified at the suppression hearing. See Resp. Ex. A at 186-257.

interview, and determined that Lawrence did not invoke his right to an attorney.[12] The Court notes that credibility determinations are questions of fact. See Martin v. Kemp, 760 F.2d 1244, 1247 (1985) (per curiam) (finding that factual issues include basic, primary, or historical facts, such as external events and credibility determinations). Here, Lawrence has not rebutted the trial court's credibility finding by clear and convincing evidence. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Given the trial court's credibility determination and its "plausible reasons"[13] to credit the law enforcement officer's account over Lawrence's factual assertions, Lawrence's claim is wholly unsupported, and therefore must fail. Therefore, Lawrence is not entitled to federal habeas relief as to ground one.

## B. Ground Two

As ground two, Lawrence asserts that appellate counsel was ineffective because he failed to raise the following claim on direct appeal: the trial court committed fundamental error when it improperly instructed the jury that the crime of manslaughter required that he intentionally caused the victim's death. See Petition at 4-7 (citing Tr. at 915). He states that the First

---

[12] The court stated: "Sergeant Dingee just bent over backwards to give [Lawrence] the opportunity to say and, in fact, eventually he did say, okay, I want my lawyer." Resp. Ex. A at 247.

[13] Landers v. Warden, Att'y Gen. of Ala., 776 F.3d 1288, 1297 (11th Cir. 2015).

District Court of Appeal's decision in <u>Montgomery v. State</u> <u>(Montgomery I)</u>, 70 So.3d 603 (Fla. 1st DCA 2009) was pending review in the Florida Supreme Court at the time his direct appeal became final, and therefore, appellate counsel should have argued the issue.[14] <u>See</u> Petition at 4.

Lawrence raised the ineffectiveness claim in his pro se petition for writ of habeas corpus, <u>see</u> Resp. Ex. M, and the

_____

[14] On February 12, 2009, the First District Court of Appeal held that intent to kill is not an element of manslaughter by act and that it was fundamental error to give an instruction stating that the State was required to prove intent to kill to prove the crime of manslaughter. <u>See</u> <u>Montgomery I</u> at 604-07. Lawrence's direct appeal was pending when the appellate court decided <u>Montgomery I</u> on February 12th and the Florida Supreme Court granted review on May 7, 2009. <u>See</u> <u>State v. Montgomery</u>, 11 So.3d 943 (Fla. 2009). On April 8, 2010, the Florida Supreme Court stated:

> In conclusion, we approve the decision of the First District Court of Appeal to the extent that it held that manslaughter by act does not require proof that the defendant intended to kill the victim and concluding that in this case, the use of the standard jury instruction on manslaughter constituted fundamental error. We answer the certified question in the negative and hold that the crime of manslaughter by act does not require that the State prove that the defendant intended to kill the victim. We further hold that the intent which the State must prove for the purpose of manslaughter by act is the intent to commit an act that was not justified or excusable, which caused the death of the victim. Moreover, we conclude that the use of the standard jury instruction on manslaughter constituted fundamental, reversible error in Montgomery's case and requires that Montgomery receive a new trial. . . .

<u>State v. Montgomery</u>, 39 So.3d 252, 259-60 (Fla. 2010).

24

appellate court dismissed the petition as untimely, see Lawrence, 92 So.3d 855; Resp. Ex. N, and later denied his motion for rehearing, see Resp. Ex. O. Respondents contend that the claim is procedurally barred. See Response at 9-14. Lawrence asserts that he raised the issue in his Rule 3.850 motion.[15] See Reply at 2. On this record, the Court opines that the claim has not been exhausted, and is therefore procedurally barred since Lawrence failed to raise the claim in a procedurally correct manner. Lawrence has not shown either cause[16] excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. Therefore, the Court need not reach the merits of ground two.

---

[15] Lawrence raised the issue in his Rule 3.850 motion as one of ineffectiveness of trial counsel and trial court error, see Resp. Ex. I at 170-83; the post-conviction court denied the motion as to the issue, see id. at 355-56; and the appellate court determined that the claim was untimely, see Lawrence, 149 So.3d at 1163.

[16] Lawrence's reliance on Martinez to establish "cause" for his procedural default of the ineffectiveness claim is misplaced. Notably, Martinez applies only to procedurally defaulted claims of ineffective assistance of trial counsel. See Davila v. Davis, 137 S.Ct. 2058, 2065-66 (2017) (declining to extend Martinez to procedurally defaulted claims of ineffective assistance of appellate counsel); see also Gore v. Crews, 720 F.3d 811, 816 (11th Cir. 2013).

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Lawrence seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Lawrence "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether

the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Lawrence appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 15th day of May, 2018.

MARCIA MORALES HOWARD
United States District Judge

sc 5/15
c:
Freddie Lawrence, FDOC #J36456
Counsel of Record